No. 21,428.

ALEXANDER DE LEON, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Night Watchman Injuring Trespasser in Railroad Yards—Liability of Master.* A night watchman in the employ of a railway company, whose duty it was to guard and protect property in the railway yards and prevent cars from being broken into and goods stolen therefrom, shot and injured the plaintiff, who was loitering after midnight in the yards near where several cars stood, the seals of which had been broken. In an action against the railway company to recover damages for his injuries, *held,* in view of the general verdict and all the findings of fact, that the defendant is not entitled to judgment on the findings on the ground that they show the act of the watchman was committed in self-defense, nor upon the ground that they show the assault was committed outside the scope of the servant's employment.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed December 7, 1918. Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*S. B. Amidon, D. M. Dale, S. A. Buckland,* and *Glenn Porter,* all of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The railway company appeals from a judgment in plaintiff's favor in an action for personal injuries.

The plaintiff, who is a Mexican, alleged in his petition that he was crossing defendant's tracks in the city of Wichita about

midnight, using a path traveled by people generally for many years, and that the servant of defendant wantonly, intentionally, maliciously, and with gross negligence, shot plaintiff in the leg, seriously injuring him. The answer set up contributory negligence; it was alleged that Harlan, the employee of defendant, was engaged as a night watchman charged with the duty of preventing freight cars containing merchandise belonging to shippers from being broken open and robbed; that four freight cars in the custody of defendant containing valuable merchandise had been broken open, and that about 2:15 in the morning of February 1, 1915, Harlan noticed two men walking in the yards, who stopped near one of these cars, one of the men being the plaintiff; that Harlan ran across the track toward the men, one of whom shot at him with a pistol, and that the plaintiff then came at Harlan in a threatening manner with a steel bar in his hands and muttering oaths in Mexican; that in order to protect himself from great bodily harm, Harlan fired the shot which injured the plaintiff; and that he was at the time in imminent danger of great bodily harm at the hands of the plaintiff. It was further alleged that just before the shot plaintiff had been, with some other persons, engaged in a conspiracy to rob the cars of the defendant. The reply was a general denial.

Plaintiff, whose testimony was given through an interpreter, explained his presence in the railway yards of defendant by the statement that he was on his way home from a moving-picture show when he met a friend, who offered him a drink of liquor; that at his suggestion they stepped between two freight cars, and while standing there taking a drink, plaintiff was shot; and that he did not see Harlan before the latter shot him. He also testified that he was in the yards looking for a woman for immoral purposes. Harlan testified that he had been a watchman for about ten years; that on the night in question he found the seals broken on four cars containing oranges; that he heard a noise and saw plaintiff and another man beside the door of one of the cars and had heard several car doors opened before he went around where the men were; that he attempted to arrest the parties and called to them to halt, when the man who was with plaintiff shot at him, and that plaintiff turned and faced him with an iron bar in his hand and muttering in Mexi-

can; that he shot because he thought something was going to happen, and that it appeared to him plaintiff was going to strike him with the bar; that he did not shoot to kill, but to stop plaintiff; that he wasn't aiming to shoot him at all; and that after he shot he went over and searched plaintiff, but found no pistol. He said he shot because he thought the plaintiff was going to strike him with the bar; he shot to protect himself and to capture plaintiff.

There was a general verdict in plaintiff's favor for $500, and the jury answered a number of special interrogatories. The court overruled defendant's motion for judgment in its favor on the special findings, and the defendant elected to stand on its motion. The principal findings are:

"Q. 2. Was there any defined or visible foot path running across the railway tracks where plaintiff was shot? A. No.

. . . . . . . . . . , .

"Q. 4. Was the place where plaintiff was shot among the switching tracks in defendant's yards at Wichita where freight cars were at frequent intervals by day and night placed for unloading? A. Yes.

"Q. 5. What was Harlan's purpose and motive in firing the shot in question? A. To stop plaintiff.

"Q. 6. Was said Harlan in the fear of sustaining serious bodily injury at the hands of plaintiff when he shot plaintiff? A. Yes.

"Q. 7. Was said Harlan, in firing the shot, moved solely by anger, malice or personal resentment toward plaintiff? A. No.

"Q. 8. Did said Harlan believe it necessary to attack plaintiff in order to prevent him from molesting or stealing property in defendant's yards? A. No.

"Q. 9. State just what plaintiff did at the time in question from the time he first saw Harlan until Harlan shot him. A. He moved away.

"Q. 10. Did Harlan intend to actually shoot the plaintiff when he fired the shot? A. No.

"Q. 11. Was the plaintiff intending to break into any cars or molest any property at the time the said Harlan shot him? A. No.

"Q. 12. Did Harlan believe plaintiff had broken into any cars when he fired the shot in question? A. Yes.

"Q. 13. Were the seals broken on several freight cars that were standing immediately adjacent to the point where the shooting occurred? A. Yes.

"Q. 14. Was the shooting caused simply by a mistaken impression on Harlan's part as to plaintiff's intention and purposes in being where he was at the time in question? A. Yes."

In support of the contention that the findings acquit defendant of liability under the doctrine of *respondeat superior*, it is argued, first, that the answer to question No. 6 is a finding

De Leon v. Railway Co.

that Harlan acted in self-defense; that if he had been defendant in a criminal prosecution or a civil suit, it would have exonerated him from guilt or liability; and that the same defense is available to the master. Among the authorities cited on this point is 3 Cyc. 1073, where it is said: "It has been very generally held that he is justified in repelling the assault by the exercise of such reasonable force as may be, or as appears to him at the time to be, necessary, to protect himself from bodily harm, though he was not actually in danger." In the same paragraph it is, also said that "The doctrine of self-defense cannot be successfully invoked, however, where defendant was the aggressor, or where he used more force than was reasonably necessary for his protection," and authorities are cited in the note to the text on the well-settled proposition that his belief should be such as a reasonable person would entertain under like circumstances.

In the last instruction which the court gave, and which is the law of the case upon this question, the jury were charged that if they found that Harlan was lawfully attempting to arrest plaintiff, and that the latter threatened to do him great bodily harm, Harlan would be justified in using such measures to protect himself as would seem proper to a reasonably prudent person at the time and under the circumstances, but would not be justified in using more force than was necessary to protect himself against violence on the part of the plaintiff. The jury must have been satisfied that, while Harlan believed he was in danger of great bodily harm from plaintiff, he used more force that was necessary, and more than would seem proper to a reasonably prudent person at the time and under the circumstances. On this point we must hold that defendant is not entitled to judgment on the ground that the general verdict is overturned by findings showing that the servant acted in self-defense.

The main contention, however; is that findings 5, 8, and 9 conclusively establish that the assault was not within the scope of Harlan's employment, because they show that when he shot, the plaintiff was in the act of moving away, and that Harlan's purpose and motive in shooting was to stop him; and also show that Harlan did not believe it necessary to attack plaintiff in order to prevent him from molesting or stealing property in

the defendant's yards. The defendant refers to *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621, where it was said :

"The act must not only be done in the time, but in pursuance of the objects of the employment, in furtherance of duty. If done solely to accomplish the employee's own purpose or device, although in an interval of his regular service, the employer is not liable." (p. 481.)

In that case, a brakeman after he had ejected trespassers from the train, left the train, ran after them and fired the shot which caused the death of one of them. He did this because after they left the train, they swore at him. His purpose was to satisfy his personal vengeance upon the trespassers for what they said to him. As a matter of law, it was held that he had stepped aside from his master's business to perform an act not connected therewith, and that the master was not liable for the consequences of his act.

In *Crelly v. Telephone Co.*, 84 Kan. 19, 113 Pac. 386, the local manager of the company assaulted and struck a telephone operator because she refused to sign a voucher for her wages when she was about to quit the service. It was held that the company was not liable for his wrongful act, because he was not employed for any such purpose, although it was within the scope of his duties and authority to require her to sign a voucher. It can hardly be said, we think, that the law applied to the facts in those cases, controls the present case. Harlan was a night watchman, armed and employed by defendant to guard and protect its property, prevent freight cars in its custody from being burglarized, and to arrest persons found in the act of stealing from the cars. The fact that when he fired the shot he was mistaken in his belief that plaintiff had broken into the cars, would not take the act of shooting outside the scope of his employment. He was employed with the knowledge that he might make mistakes in this very respect, for which the master would be liable. The law as to this feature of the case is likewise stated in the instructions. They charged that if the jury found plaintiff had committed or attempted to commit a felony (as defined in other instructions), Harlan had the right to arrest him, either upon actual view of the act, or in hot pursuit of the person who committed it; but that before he would have the right, either as an officer without a warrant, or as a private person, to arrest plaintiff, a felony must recently

De Leon v. Railway Co.

have been actually committed, or an attempt made to commit one, and such offense or attempt must have been made by plaintiff.

Harlan had testified that he fired the shot for two purposes, first, because he considered himself in serious danger and fired in self-defense, and, second, that he fired for the purpose of stopping the plaintiff and making his arrest. Under the instructions, the general verdict must be held to include a finding that the plaintiff had not committed or attempted to commit a felony; that he had not broken or attempted to break the seals of the cars. On this feature of the case, it cannot be said as a matter of law, that the findings establish facts showing that the assault of the servant was committed outside of and beyond the scope of his employment.

It cannot be doubted that if plaintiff had, in fact, broken into these cars, or attempted to steal merchandise therefrom, when he was discovered, and reasonable and proper means to protect the company's property made it necessary for the watchman to shoot the plaintiff, the servant of the company would have been acting within the scope of his employment. As held in a case cited in plaintiff's brief:

"He was undoubtedly charged by appellants with the authority, and it was his duty to exercise the discrimination necessary to distinguish between burglars, thieves, depredators and innocent persons, and to make arrests when called for by the circumstances, and to determine the degree of force necessary to be exercised. If, through want of proper care or the exercise of the proper discrimination, he mistook appellee for a depredator or person who otherwise should be dealt with in the manner in which he did deal with him, he was certainly acting within the apparent scope of his employment, and the appellants must be held liable for any want of proper discrimination or improper conduct of his in that respect." (*Baker et al. v. Ives*, 188 S. W. 950, 953 [Tex. Civ. App.].)

The judgment is affirmed.