## ADA-KONAWA BRIDGE CO. v. CARGO.

No. 21452. Opinion Filed Dec. 6, 1932.

Rehearing Denied April 18, 1933.

Wm. L. McCann and Albert D. Lynn, for plaintiff in error.

George Trice, Denver N. Davison, and John Blanford, for defendant in error.

McNEILL, J. This action was filed in the district court of Pontotoc county, to recover damages for personal injuries. The parties will be referred to as they appeared in the trial court. The plaintiff alleged that he was driving an automobile from his home in Seminole county to Ardmore; that while crossing the toll bridge across the Canadian river north of Ada, Okla., he was shot and received a flesh wound in the right arm above the elbow; that the shot was fired by one of the agents, servants, or employees of the defendant, and that said shot was fired with the willful, wanton, malicious, and negligent intent upon the part of said servant or employee of said defendant to strike, injure, and wound the plaintiff in utter disregard of the rights of plaintiff and that the plaintiff suffered serious, painful, and permanent injury. Plaintiff prayed for a judgment against the defendant company for the sum of $5,250 actual damages.

It appears that the petition named "McKeown Bridge Company, a Corporation," as defendant. A praecipe for summons was duly filed and summons issued to the sheriff of Oklahoma county, Okla., to serve said defendant company. The summons was served upon Geo. D. Key as service agent. Thereafter, on July 11, 1928, a special appearance and motion to quash said summons and return was filed. While this special appearance and motion to quash was pending, plaintiff, on September 26, 1928, filed a motion to substitute "Ada-Konawa Bridge Company" as defendant in the action. The court sustained said motion and directed that said bridge company, a common-law trust, be substituted as defendant in said action and directed that summons issue to the substituted defendant as the law directs. Subsequently, the praecipe for summons was filed directing the clerk to issue summons to the sheriff of Oklahoma county, state of Oklahoma, "to serve in his county on Ada-Konawa Bridge Company (serve Geo. D. Key), defendant in said cause." On October 24, 1928, summons was issued to the sheriff of said Oklahoma county "to notify Ada-Konawa Bridge Company (serve Geo. D. Key), etc." The sheriff's return is as follows:

"Received this writ Oct. 26, 1928, at ____ o'clock _____m.. and served the same upon the following person defendant, within named, at the times following, to wit:

"Ada-Konawa Bridge Company, by delivering a true copy to Geo. D. Key, in person, he being service agent for the above-named Ada-Konawa Bridge Company, Oct. 26, 1928, by delivering to said defendants, personally, in said county, a true and certified copy of the within summons with all the indorsements thereon.

"(Sgd.) Ben B. Dancy,
"Sheriff,
"By (Sgd.) M. O. Baggerle,
"Deputy."

On November 26, 1928, the defendant filed a special appearance and motion to quash said summons. Said motion being as follows (omitting caption):

"Special Appearance and Motion to Quash Summons and Return:

"Comes now Ada-Konawa Bridge Company, an express trust, appearing specially and for the purpose of this motion only, and moves the court to quash, set aside, and hold for naught the purported summons and purported service thereof, in the above-entitled cause, for the reason that the same was not issued, served, and returned according to law, and is insufficient to confer jurisdiction on this court.

"The copy of said purported summons

delivered by George D. Key at Oklahoma City, Okla., by the deputy sheriff of Oklahoma county, Okla., is hereto attached, marked 'Exhibit A' and made a part of this motion.

"Wm. L. McCann,

"Attorney for Ada-Konawa Bridge Company, an express trust."

(Exhibit "A" not being copied.)

On April 24, 1929, the court overruled said motion, and the defendant was given time to plead or answer. The defendant thereafter filed its demurrer to plaintiff's petition on the ground that the facts set forth in plaintiff's petition were insufficient to constitute a cause of action in favor of the plaintiff and against the defendant. The demurrer was overruled, and the defendant was given 20 days within which to answer. The plaintiff was allowed to amend his petition by interlineation showing the 'proper substituted name for the defendant. Defendant filed its answer. The first paragraph was a general denial. Defendant further alleged in the answer that the defendant company was the owner of and operating said toll bridge across said river and was the owner and operator of the bridge at the times complained of by plaintiff in his petition. Defendant further alleged in its answer that the plaintiff had willfully and fradulently passed the toll gate of defendant where toll is charged for crossing said bridge at the Seminole county end of said bridge, and at the time he received the injury complained of in his petition was crossing said bridge in an automobile without having paid the legal toll for crossing the same and was doing so willfully and fraudulently to escape paying said toll. Defendant specifically denies that the shot which plaintiff alleged struck and injured him was fired by any servant, agent, or employee of said defendant.

Plaintiff filed a reply denying the allegations of said answer except as admitted in plaintiff's petition. specifically denying that plaintiff at the time he was shot was willfully and fradulently attempting to escape paying the toll as alleged by defendant, and further alleged that the defendant had in all things ratified the willful, wrongful, malicious, and negligent act of its servant and employee in shooting the plaintiff.

The defendant thereafter, on January 28, 1930. filed a verified answer to the reply filed by plaintiff, being as follows (caption omitted):

"Answer to Reply Filed by Plaintiff Jan. 28, 1930.

"Comes now the defendant, Ada-Konawa Bridge Company, an express trust, and denies that it has at any time or in any manner ratified the act of Pete Martin, in firing the shot or shots, one of which struck and wounded the plaintiff, and further specifically denies that the said Pete Martin was, at the time the said shot was filed, a servant, agent or employee of this defendant."

"Wm. L. McCann,

"Attorney for Defendant."

(Verification omitted.)

The case came on for trial on January 28, 1930, and resulted in a verdict and judgment for plaintiff in the sum of $5,250. An appeal was duly lodged in this court.

As we view this record, counsel for plaintiff in error rely primarily on the proposition that the district court of Pontotoc county had no jurisdiction in this case; that the action was a transitory action and was required to be brought in the county in which the defendant or some of the defendants resided or may be summoned; that the defendant was an express trust, and had its principal office or place of business in Oklahoma county; that it maintained no office or place of business in Pontotoc county at any time, and that the toll house and gate where toll was collected was in Seminole county; that it was error on the part of the court to overrule defendant's special appearance and motion to quash the summons; that defendant saved its exceptions to said ruling; thereafter defendant demurred to said petition. which was overruled, and then filed its answer in said cause and insists that the objection to the jurisdiction was properly made and was never waived by defendant, and that this objection to the jurisdiction should have been sustained by the court.

Under this record, we conclude that this objection cannot be sustained. An examination of the special appearance and motion to quash does not in any manner direct the court's attention to any fact or circumstance which shows that counsel for defendant was relying on the question of venue. A motion to quash states that the summons and purported service thereof be set aside for the reason "that the same was not issued. served, and returned according to law, and is insufficient to confer jurisdiction on this court." Had the question of venue in this transitory action been timely made, the defendant would have been entitled, as a matter of right or as a matter of privilege, to have had said cause dismissed in said county. The motion to quash was directed solely to the summons, not to the petition, and did not raise the

question of jurisdiction over the defendant by reason of abuse of legal process issuing from one county to another, or on account of venue. Counsel for defendant contends that the question of venue was properly raised in said motion to quash and cites the case of Braden v. Williams, 101 Okla. 11, 222 P. 948, to support their contention. However, an examination of this case shows that the defendant was served with summons on return day, and thereby was given one day less time within which to answer than as provided by law. The motion to quash was proper in that case and the issue was properly presented that the summons was not returned according to law. This was a jurisdictional defect. It has no application to the case at bar. In the instant case there is nothing wrong with the summons in reference to its being issued, served, and returned according to law. We think the rule was correctly announced in the case of Fisher v. Fiske, 96 Okla. 36, 219 P. 683. An examination of the record in that case shows that counsel in their motion to quash specifically raised the question of venue, and that by reason of nonresidence the district court of Tulsa county had no jurisdiction to hear and determine said case. That was an action to recover damages for personal injuries received in an automobile accident. One of the defendants was a resident of Tulsa county and the other defendants were nonresidents, and said nonresidents challenged the jurisdiction of the court over them. When the action failed as to the resident defendant, the nonresident defendants renewed their challenge to the jurisdiction of the court. In that case this court held that the court had no authority to render judgment against said nonresident defendants.

In the instant case, counsel for the defendant at the conclusion of the evidence introduced his special appearance and motion to quash, to which was attached the summons, and asked for a directed verdict on the ground the evidence had disclosed that this was a transitory action, and that the venue does not lie in the county in which the action was being tried, and that this question was raised by his special appearance and motion to quash. We do not consider this question was timely presented.

In the case of Patrick v. Williamson, 19 App. Div. 451, 46 N. Y. S. 504, the Supreme Court of that state, in the second paragraph of the syllabus announced the following:

"Upon a special appearance, for the purpose of testing the jurisdiction of the court over the person of the defendant, the mo-

tion should distinctly and definitely point out the defect upon which it relies, and all other objections are waived by a subsequent general appearance."

In the case of Bankers' Surety Co. v. Town of Holly, 219 Fed. 96, the Circuit Court of Appeals (Eighth Circuit) said:

"A motion to quash the service of process must distinctly point out the defects in the service, and nothing beyond the scope of the motion will be considered. Cheney v. Chicago City Nat. Bank, 77 Ill. 562; Smith v. Delane, 74 Neb. 594, 104 N. W. 1054; Bucklin v. Strickler, 32 Neb. 602, 49 N. W. 371; Brown v. Goodyear, 29 Neb. 376, 45 N. W. 618; Freeman v. Burks, 16 Neb. 328, 20 N. W. 207; Smelt v. Knapp, 16 Neb. 53, 20 N. W. 20; Perkins v. Mead, 22 How. Prac. (N. Y.) 476; Thibault v. Connecticut Valley Lumber Co., 80 Vt. 333, 67 Atl. 819; Barrows v. McGowan, 39 Vt. 238."

40 Cyc. 111, announces the following rule:

"However, according to the better rule, supported by the weight of authorities, the bringing of an action in an improper county or district is not a jurisdictional defect, where the court has general jursdiction of the subject-matter, and that the statutes fixing the venue in certain actions confer a mere personal privilege which may be waived. * * *

"Where a party fails to properly and reasonably lay claim to the personal privilege conferred by statute, he waives his right to object to the bringing of the action in the wrong county." Citing many cases.

The first intimation the trial court ever had, as shown by the record, that the defendant was contending that the special appearance and motion to quash presented the question of venue, was when counsel for defendant requested aforesaid directed verdict. This was a transitory action; the court had jurisdiction of the subject-matter, and counsel for defendant had the right extended by statute to have this case tried in the proper county, but it was incumbent upon counsel to timely present this question. It was not presented in the motion to quash nor by the demurrer, nor in the answer filed by defendant. It could have been properly presented at any time prior to the time of filing the answer, or it could have been presented at the time the answer was filed.

Where defendant is served with a summons in a civil action pending in a county other than that of his residence, and denies the jurisdiction of the court over his person, he must present that question for determination at as early stage in the proceedings as is possible by proper motion, pleading, or answer, and if he proceeds to

the trial of the case and does not in apt time present this single question until the conclusion of the evidence, we are of the opinion that such presentation of this jurisdictional question over his person is not timely, and that said defendant will be regarded as having waived this statutory right or privilege and to have submitted himself to the jurisdiction of the court. See Wells v. Patton, 50 Kan. 732, 33 P. 15; Bates Pleading, Practice and Forms (4th Ed.) sec. 554a; First Nat. Bank v. Geneseo Town Co., 51 Kan. 215, 32 P. 902; Iles v. Heidenreich, 271 Ill. 485, 111 N. E. 524.

Section 5369, C. O. S. 1921, provides that every bridge corporation must at all times keep a toll bridge in good, safe condition for travel both night and day, unless it be rendered impassable by reason of floods and high water. Section 5372, C. O. S. 1921, provides that each toll-gatherer is authorized to prevent all persons or vehicles from passing through his gates until such toll-gatherer has received the tolls authorized by law to be collected, and section 5373, C. O. S. 1921, provides if any person forcibly, willfully, or fraudulently passes over such toll bridge without having paid the legal toll, such person is liable for penalty. From these provisions of the statute it is apparent that it was necessary to have some one in charge of the bridge for the safety of the public and collection of the tolls, both day and night.

The inference or presumption is properly indulged in that George Martin, the father of Pete Martin, was in charge of the bridge for the defendant company. It was handled more or less by the Martin family, the wife, daughter, and brother of George Martin, and at times with the aid of Pete Martin, the son of George Martin. It is manifest that it was part of the duties of George Martin to keep the bridge in repair and to keep and prevent persons from passing over the same who did not pay the legal toll, and it was his further duty to collect this toll from those passing over the bridge. He was required to deposit the tolls in the bank at Konawa several miles distant, and of necessity some one other than himself was required to look after these matters when he was gone. Under such circumstances the jury could properly infer that he had implied authority to delegate these matters to his son for the purpose of conducting defendant's business. The necessity of this work required some one to be constantly in charge. This implied authority was a question of fact within the province of the jury and was to be determined from all the facts and circumstances

presented by the evidence. Minn. Thres. Mach. Co. v. Humphrey, 27 Okla. 694, 117 P. 203; Midland Savings & Loan Co. v. Sutton, 30 Okla. 448, 120 P. 1007; Iowa Dairy Sep. Co. v. Sanders, 40 Okla. 656, 140 P. 406; Mass. B. & I. Co. v. Vance, 74 Okla. 261, 180 P. 693.

The jury found, under proper instructions, by their verdict that Pete Martin was a servant, agent, or employee of said defendant.

2 C. J. 688, sec. 347, announces the following rule:

"Express authority to appoint subagents is not always necessary, as such authority is usually to be implied when the agency obviously and from its very nature is such as to make the employment of subagents necessary and proper. In such cases the employment of subagents is presumed to have been contemplated when the power was given, and the agent has implied authority to appoint such subagents within the limits of the necessities of the case, and in some jurisdictions it is expressly provided by statute that an agent may delegate his authority when it is such that he cannot himself perform it. Accordingly, whenever the agent can show that the instructions of his principal could not have been properly executed without the employment of subagents, he will be warranted in delegating so much of his authority as the character of the agency demands."

In the case of Fritz v. Western Union Tel. Co., 25 Utah 263, 71 P. 209, on page 214, the Supreme Court of Utah said:

"Appellants also complain that evidence was erroneously admitted respecting the authority which was given by the general foreman, placing Buchanan in charge of the work at the time the accident occurred. The contention is that the general foreman possessed no authority, either express or implied, to employ any subagent. In this statement we cannot agree. We think from the facts in the case that an implied authority did exist. The defendant had employed Mosher to have general charge of the construction of the telegraph line between Park City and Salt Lake City, which required the services of some nine or ten men. Up to about three days before the accident these men were directed by an asserted foreman, who had the key to a box car containing their tools. After his discharge, Buchanan took his place and had charge of the tools. The evidence shows that the necessity of the work required a man constantly in charge, and that such a charge was vested in both Mosher and Buchanan. Under such circumstances, we think the authority of Buchanan may be implied. It is not necessary in every instance to show that a subagent has been expressly appointed by the master. Says Mr. Mechem, in his work on Agency: 'It is obvious, too, that there are

many cases where, from the very nature of the duty, or the circumstances under which it is to be performed, the employment of subagents is imperatively necessary, and that the principal's interest will suffer if they are not so employed. In such cases the power to employ the necessary subagents will be implied. The authority of an agent is always construed to include the necessary and usual means to execute it properly.' In Shear & R. Neg. sec. 156, it is said: 'The master is, of course, liable for the negligence of one whom his servant employs by his authority to aid such servant in the master's business. Such authority need not be expressed, but may be implied from the nature of the business or the course of trade, thus such an authority would almost necessarily be implied in favor of a servant intrusted with the whole care of a farm, or the construction of a building, or distribution of a large quantity of goods, or any other task which could not be performed within a reasonable time by one man.' If an exigency exists or arises making it necessary for the proper carrying out of the master's business that a subagent should be employed, then the authority so to do will be implied. Mickelson v. Railway Co., 23 Utah, 42, 64 P. 463; Underwood v. Birdsell (Mont.) 9 P. 922. We think the court committed no error in admitting the testimony complained of, nor in refusing to give the instruction requested by appellants relating to this same subject-matter."

Counsel for defendant contends that their demurrer to the petition of plaintiff should have been sustained on the ground that the petition did not state facts sufficient to consitute a cause of action against the defendant on the theory that the petition did not specifically allege that the servant, agent, or employee of the defendant, who fired the shot which struck the plaintiff, and which was alleged to have been shot by said servant, agent, or employee with the willful, wanton, malicious, and negligent intent to injure said plaintiff in utter disregard to the rights of plaintiff, was acting within the scope of his authority, and that the failure to allege that said agent was so acting was fatal to the petition on demurrer.

In the absence of a motion to make more definite and certain, a petition should be liberally construed in favor of the pleader and against the demurrant. See Guilliott v. Kennedy, 101 Okla. 179, 224 P. 540.

Under the liberal rule which prevails in this state regarding amendments for the purpose of rendering substantial justice, a cause ought not to be reversed because there has been a defect or an omission in the allegations of the petition, when such defects or omissions have been fully supplied by the proof, and which results in no substantial prejudice to any of the parties to the action. Guilliott v. Kennedy, supra; Burgner-Bowman Lmbr. Co. v. McCord-Kistler Merc. Co. (Kan.) 216 P. 815; Fire Ass'n of Philadelphia v. Correll, 158 Okla. 292, 10 P. (2d) 686.

39 C. J. page 1353, announces the following rule:

"Where a willful and intentional injury by the servant is charged, a failure to allege that he was acting within the scope of his employment renders the complaint insufficient on demurrer; but a direct averment in terms to this effect is unnecessary if it appears by necessary implication from the facts stated * * *."

The Supreme Court of Wisconsin, in the case of Savich v. Hines, Director General of Railroads, 182 N. W. 924, in the second paragraph of the syllabus said:

"Where it can be assumed that the trial court would have permitted an amendment of the complaint if it had been requested, appellate court will consider case as though complaint were amended."

The Supreme Court of Washington, in the case of Holloway v. Geck, 158 P. 980, said:

"The first contention of the defenants is that the complaint does not state facts sufficient to constitute a cause of action; but we think that all the objections urged by them have been met by the proofs offered on the trial, and we will deem the complaint amended to conform to such proofs."

The Supreme Court of Kansas, in the case of Burgner-Bowman Lumber Co. v. McCord-Kistler Mercantile Co., said in the sixth paragraph of the syllabus, on motion for rehearing, 216 P. 815, as follows:

"It is competent for the court to treat pleadings as amended upon an issue which has been fully tried out, where it cannot work substantial prejudice to any of the parties to the action, and it is held that the answer of the defendant herein may be treated as amended to ask for a recovery of damages."

Also, in this connection, see Baltimore & O. S. W. R. Co. v. Beach (Ind.) 163 N. E. 618.

The presumption exists that, when the servant is in performance of his master's business, he is acting within the scope of his employment. See Doherty v. Lord, 28 N. Y. S. 720.

The facts stated in the petition imply, at the time of firing the shot, Pete Martin was an agent, servant, or employee of the

defendant, acting within the scope of his employment, in an endeavor to collect the toll or fees in furtherance of defendant's business.

On the question of the liability of the master for the tortious acts of his servant or agent at issue in the instant case, the Supreme Court of Kansas, in the case of Mansfield v. Wm. J. Burns Detective Agency, 171 P. 625, speaking through Mr. Chief Justice Johnston, said:

"That general rule is that a master or principal is liable for the tortious acts of his servant or agent where such acts are incidental to and done in furtherance of the business of the master or principal and this is true, although the servant or agent acted in excess of the authority conferred upon him, or willfully or maliciously committed the wrongs."

The Supreme Court of Kansas, in the case of Bjorkman v. Atchison, T. & S. F. Ry. Co., 231 P. 1029, in considering the question of the willful, wanton, reckless, or malicious negligence of the servant of said railway company, quoted with approval from the case of Dixon v. Northern Pac. R. Co., 37 Wash. 310, 79 P. 943, as follows:

"It is well settled, generally, that a railroad company is responsible in damages to a trespasser for torts committed upon him by a servant, who, in the commission of the tort, is acting in the line of his employment, and within the scope of his authority, not within the scope of his authority as applied to the commission of the tort, for no authority for such commission could be conferred, but within the scope of his authority to rightfully do the particular thing which he did do in a wrongful manner."

In the case of Childers v. Southern Pac. Co., 20 N. M. 366, 149 P. 307, the Supreme Court of New Mexico, in discussing the liability of the master for the wanton and malicious acts of the servant, said:

"It has been held, in a great variety of cases, that the master is liable for the wanton or malicious acts of his servant if they were committed while the servant was acting in the execution of his authority and within the course of his employment. Mechem on Agency (2d Ed.) section 1960; Elliott on Railroads, section 1265. Some of the earlier cases, it is true, announced the contrary rule; but this doctrine no longer prevails. The difficult question is to determine what acts may be deemed within the course of the servant's employment, within the meaning of the rule. Mechem on Agency, section 1960, states the rule as follows: 'But in general terms it may be said that an act is within the "course of employment" if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account'."

See, also, 39 C. J. 1292; Kansas City, Ft. S. & G. R. Co. v. Kelly (Kan.) 14 P. 172; Johnson v. Monson (Cal.) 190 P. 635.

The instant case was tried on the theory that Pete Martin at the time he fired the shot was the agent, servant, or employee of the defendant company, and fired said shot in the performance of his duty and within the scope of his authority, to prevent plaintiff from escaping from paying his legal toll which said Martin was at the time of firing said shot endeavoring to collect from plaintiff. The petition is not to be commended as a model, but facts are stated in the petition to justify the inference that the servant who fired the shot was acting in the course and scope of his employment with said defendant, at the time that he fired the shot in question, in furtherance of his master's business. These issues were tried. Evidence was fully offered on all of these questions. No substantial prejudice resulted to defendant under such circumstances, and this court will treat the pleadings as amended to conform to the proof.

We have examined the instructions which were given by the court and the refused requested instructions. Counsel for the defendant did not object to a single instruction which was given by the court. The defendant complained that the court erred in refusing to give certain instructions offered by the defendant to which it was entitled, and which were not covered by the instructions that the court gave. We think the court fairly and properly instructed the jury, and that there was no error in refusing the requested instructions. We find no prejudicial error in this case.

Judgment affirmed.

RILEY, CULLISON, SWINDALL, and ANDREWS, JJ., concur. LESTER, C. J., and CLARK, V. C. J., dissent. KORNEGAY and HEFNER, JJ., dissent.

CLARK, V. C. J. (dissenting). This suit was filed in Pontotoc county by J. E. Cargo against McKeown Bridge Company, a corporation. An attempt to get service was

had, a motion to quash said attempt at service was sustained and the court ordered that Ada-Konawa Bridge Company, an express trust, be substituted as defendant in the action and directed that summons be issued to said substituted defendant. Later, a praecipe for summons was filed, directing the clerk to issue summons to the sheriff of Oklahoma county, state of Oklahoma, to serve in his county on the Ada-Konawa Bridge Company (serve Geo. D. Key), defendant in said action. The sheriff of Oklahoma county made his return, which was in part as follows:

"by delivering a true copy to Geo. D. Key in person, he being service agent for the above-named Ada-Konawa Bridge Company, Oct. 26, 1928. * * *"

Special appearance was made by the defendant and motion to quash, which reads as follows:

"Comes now Ada-Konawa Bridge Company, an express trust, appearing specially and for the purpose of this motion only, and moves the court to quash, set aside, and hold for naught the purported summons and purported service thereof, in the above-entitled cause, for the reason that the same was not issued, served, and returned according to law, and is insufficient to confer jurisdiction on this court.

"The copy of said purported summons delivered to George D. Key at Oklahoma City, Okla., by the deputy sheriff of Oklahoma county, Okla., is hereto attached, marked Exhibit 'A' and made a part of this motion."

On the 24th day of April, 1929, said motion to quash was overruled.

The majority opinion admits that this motion was good, in that this was a transitory action that defendant, an express trust, could only be sued in the county where its principal place of business or office was, or in the county or residence of the trustee served, but holds that the same was waived, for the reason there was nothing wrong with the summons and return, and that the motion failed to specifically raise the question of venue, and for that reason, was not well taken. Unless waived, the district court of Pontotoc county never secured jurisdiction of the express trust.

The Supreme Court of Oklahoma Territory, in Chicago Building & Manufacturing Co. v. Pewthers, 10 Okla. 724, 63 P. 964, in the second paragraph of the syllabus, said:

"Where a court has no jurisdiction over the particular cause or of the person of the defendant, and the defendant appears specially for the purpose of calling the attention of the court to such irregularities, and the court thereupon overrules his motion to such jurisdiction, he may save his exception, file his answer and proceed to trial without waiving such error; and he may take advantage of such error on appeal to a higher court."

This rule was followed and approved in St. Louis & San Francisco Ry. Co. v. R. J. Clark, 17 Okla. 562, 87 P. 430. At page 564, the special appearance and motion reads as follows:

"Comes now said defendant, St. Louis & San Francisco Railroad Company, a corporation, appearing specially and for the purpose of this motion only, and moves the court to quash and hold for naught the summons and pretended service thereof in said cause, for the reason that same was not issued, served and returned according to law."

This court quotes with approval from the Chicago Building & Manufacturing Company Case, supra, and quotes a number of authorities from other states.

In the case of Braden v. Williams, 101 Okla. 11, 222 P. 948, this court announced and followed the same rule, and, cited with approval many cases from this court. At page 948, this court said:

"It is next contended that the defendant's special appearance and motion to quash was insufficient because it fails to direct the court's attention to the specific error complained of. The motion to quash was in substance as follows: Defendant appears specially, and for the purpose of this motion only moves the court to quash, set aside, and hold for naught summons and purported service thereof in the above-entitled cause for the reason the same was not issued, served, and returned according to law and was insufficient to confer jurisdiction upon this court. The defendant in error to support this contention cites 32 Cyc. 526, and certain cases from other jurisdictions, supporting the rule announced therein. Without discussing what the rule is in other states, this court has approved a motion almost identical with the one under consideration in the case at bar, in the case of St. L. & S. F. Ry. v. Clark, 17 Okla. 562, 87 P. 430. The motion set out in the opinion is as follows:

" 'Comes now said defendant, St. Louis & San Franscisco Railroad Company, a corporation, appearing specially and for the purpose of this motion only, and moves the court to quash and hold for naught the summons and pretended service thereof in said cause, for the reason that same was not issued, served and returned according to law.'

"The court held it was error to overrule the motion and reverse the case. This case

has been cited with approval and followed by this court in the following cases: State ex rel. Collins v. Parks, Judge, 34 Okla. 335, 126 P. 242; Wm. Cameron & Co. v. Consolidated School District No. 1, Kiowa County, 44 Okla. 67, 143 P. 182; Lausten v. Lausten, 55 Okla. 518, 154 P. 1182; St. Louis & S. F. Ry. Co. v. Reed, 59 Okla. 95, 158 P. 399; Commonwealth Cotton Oil Co. v. Hudson, 62 Okla. 23, 161 P. 535; and cited with approval by the federal court in the case of St. Louis & S. F. Ry. v. Laughmiller (D. C.) 193 Fed. 689."

The motion to quash in the instant case is almost identical with the motion approved by this court in a great number of cases. The majority opinion says this rule does not apply to the instant case, for the reason one was a jurisdictional question and the other was a question of venue. The question presented by the motion here was a question of the jurisdiction of the person. It is admitted that the court had jurisdiction of the subject-matter, but contends that the court did not have jurisdiction of the person. It is further contended that this defect was not called to the attention of the court at the time of the motion.

The special appearance and motion to quash service of summons was filed timely and was presented to the court upon the question of whether personal service could be had on the defendant in Oklahoma county and be required to appear in Pontotoc county. The praecipe and summons showed on the face that this was a transitory action; that under our law the defendant could only be sued in the county of its residence or in a county where service of summons could be had. This was all before the court in the record, made plain by the praecipe and the summons under question. It was not waived, and was presented in the form and manner that had been approved by this court in a number of cases. No case from the Supreme Court of Oklahoma is cited by the majority opinion in support of the rule announced therein.

It is true the majority opinion states:

"We think the rule was correctly announced in the case of Fisher v. Fiske, 96 Okla. 36, 219 P. 683. An examination of the record in that case shows that counsel in their motion to quash specifically raised the question of venue, and that by reason of nonresidence the district court of Tulsa county had no jurisdiction to hear and determine said case."

This case, cited with approval, is clearly against the rule announced in the instant case.

This court, in the case of Braden v. Williams, supra, admitted in the body of the opinion that there could be found a different rule from other states, but adhered to the rule that had been announced and followed in this state, and I see no good reason why the rule should not be followed in the instant case. I am of the opinion it would be the better practice to follow the Oklahoma rule in the instant case. Not only did the defendant in the court below present his motion timely to quash and question the jurisdiction of the court over the person of defendant, but, instead of waiving it, he raised it at every opportunity.

After the evidence was all in and there was no proof in the record to indicate or show that the district court of Pontotoc county had jurisdiction of the defendant, the motion was renewed and again overruled.

In an argument filed with the trial court, in support of the motion to quash, defendant in error's attorney called the court's attention to the case of General American Oil Co. v. Wagoner Oil & Gas Co., 118 Okla. 183, 247 P. 99, which case holds that an express trust can sue or be sued under the laws of this state as an individual.

The record in this case disclosed that the Ada-Konawa Bridge Company was an express trust; that the three trustees resided in Oklahoma county; that its principal place of business was in Oklahoma county; and the record further discloses that plaintiff got service on Geo. Key as one of the trustees or service agent in Oklahoma county. With all this record before the court, it cannot successfully be contended that the defendant's motion did not inform the trial court of the true status of this case at the time same was presented.

Plaintiff's petition alleged in part as follows:

"Plaintiff alleges and states that said shot was fired from a pistol by one of the agents, servants, or employees of the defendant, and that said shot was fired with the willful, wanton, malicious, and negligent intent upon the part of the said servant, agent, or employee of the defendant to strike, injure, wound, and kill the plaintiff, and in violation of the criminal laws in such cases made and provided, and in utter and reckless disregard of the rights of the plaintiff."

This petition did not state a cause of action and it was error for the court to overrule a demurrer thereto, and it was also error for the court to overrule plaintiff in error's motion for directed verdict. The demurrer should have been sustained. This

is an affirmative allegation in the petition, "that said shot was fired from a pistol by one of the agents, servants, or employees of the defendant, and that said shot was fired with the willful, wanton, malicious, and negligent intent upon the part of the said servant, agent, or employee of the defendant to strike, injure, wound and kill the plaintiff. * * *"

Nowhere does it charge that it was fired in the performance of any duty that the purported agent was performing for the defendant. Nowhere does it charge that he was acting within the scope of his employment, and, in fact, the charge of the shooting negatives any charge or proof that the person who fired the shot was acting for the defendant. Under this pleading he was acting in his own behalf and not in behalf of the defendant. He was acting with malice, maliciously; not for the purpose of collecting tolls. It is not charged that he was making any attempt to collect tolls or perform any duty connected with defendant's business, and the charge that he did it for the purpose to injure, wound, and kill the plaintiff, negatives any theory that he might be acting for the defendant. It is not shown that it was any part of the duty of the purported servant of the defendant to wound and kill any one.

The majority opinion, at page 9, in discussing the allegations of plaintiff's petition, admits the same was insufficient to state a cause of action, and says:

"Under the liberal rule which prevails in this state regarding amendments for the purpose of rendering substantial justice, a cause ought not to be reversed because there has been a defect or an omission in the allegations of the petition, when such defects or omissions have been fully supplied by the proof and which results in no substantial prejudice to any of the parties to the action."

This rule of law as announced is correct; however, it does not apply to the instant case, for the reason that the pleadings contain not an omission, but an affirmative allegation, which, if true, would relieve the defendant of any liability.

This court, in the case of Bank of Buchanan County v. Priestly, 87 Okla. 62, 209 P. 412, in the first paragraph of the syllabus, said:

"Pleadings in a civil case are not merely matters of form, but they are solemn declarations of the parties. They present to the court what the pleader claims the facts to be and upon such statement asks it to grant him relief, and he is bound by every statement against his interests made therein, and will not be heard to question the correctness thereof, so long as they remain a part of the record; and they may be taken advantage of by the adverse party at any stage of the case, either in the trial court or on appeal, if they are preserved in the transcript or case-made."

A careful reading of the pleadings discloses that the plaintiff was shot by one Pete Martin while crossing a bridge belonging to defendant, and that said shooting, according to the solemn allegations of the petition, was malicious and willful, and was done to injure, wound, and kill the plaintiff. This is a solemn allegation in the petition and the plaintiff is bound by it as long as it remains a part of the record, and it cannot be changed except by amendment or striking it from the pleadings. This court so held in Brown v. Hartford Fire Ins. Co., 108 Okla. 90, 234 P. 352, in the third paragraph of the syllabus:

"Where the testimony of a party is in conflict with his verified pleadings and no motion is made to amend the pleadings to conform to the proof, the solemn admissions in the pleadings will be treated as admitted facts and he will not be heard to question same so long as they remain a part of the record."

Under this rule, so long as it remains a part of the pleadings and the solemn allegations of the plaintiff, it is binding on him, and this is a wholesome rule because the statute provides that a petition must set forth in concise language the claim of the plaintiff. He cannot set up one theory and try the case on another theory.

The court erred in refusing to sustain the motion to direct a verdict, for the reason that at the close of the evidence there was no testimony in the record that disclosed or tended to prove that Pete Martin was an employee, agent, or servant of the defendant. It was Pete Martin who fired the shot complained of. The majority opinion states at page 7:

"The inference or presumption is properly indulged in that George Martin, the father of Pete Martin, was in charge of the bridge for the defendant company. * * * Under such circumstances, the jury could properly infer that he had implied authority to delegate these matters to his son for the purpose of conducting defendant's business."

This is an inference upon inference which does not find favor with this court. The evidence is plain, unambiguous, and not disputed or contradicted, that Pete Martin was not an employee, agent, or servant of the defendant bridge company, and was not authorized to perform any duty for the bridge company; that the mere fact that he was

at or near the bridge, and that his father was an employee of the bridge company at the time the injury occurred, could in no way, under no circumstances, be binding on the defendant.

The majority opinion is founded on the theory that there is an inference or presumption that Pete Martin was an employee of the defendant bridge company. This inference cannot be sustained and is completely destroyed by the positive evidence of George Martin and George Key.

George Martin testified as follows:

"Q. Was your son, Pete, at that time, on the pay roll of the bridge company? A. No, sir. Q. Was he an employee of the bridge company at that time? A. No, sir; he wasn't in the employment of the company. Q. He did that just as a personal matter for you? A. That was all. Q. You had never been requested or authorized ____ By Mr. Trice: We object to that as leading _____ By Mr. McCann: Well ____ Q. Had you ever been requested or authorized by the manager of the toll bridge company who employed you, to employ your son Pete as a toll gatherer? A. No, sir."

George Key, general manager and one of the trustees for the bridge company, testified with relation to the parties who had authority to collect tolls, who were employed by him, as follows:

"Q. Well, during March, 1928, did any person other than yourself have authority from that company to employ toll keepers? A. They did not. Q. Who employed Mr. George Martin? A. I did, and also his brother, Will Martin. Q. What did you employ them to do? A. I employed them to collect the toll from people crossing that bridge and when the toll was collected to deliver it to the bank. Q. In the bank up at Konawa? A. Yes, sir. Q. One was supposed to collect toll in the day-time and one at night? A. Yes, Mr. George Martin was employed to collect the toll in the day-time and his brother Will Martin at night. Q. Did you authorize Mr. George Martin, or his brother, to employ anyone to collect toll in the daytime or nighttime? A. No, sir. Q. Did you or the Ada-Konawa Bridge Company, employ Pete Martin to collect toll there? A. No, sir. Q. I will ask you if you knew before this shooting, or at the time of the shooting, that Mr. Pete Martin, Mr. George Martin's son, on one or two occasions, or on several occasions, collected tolls when his father wanted to be away? A. No, sir; I never had heard of it until that time. Q. Did you or the Ada- Konawa Bridge Company in any way ratify or acquiesce in his collection of tolls there? A. Certainly not. Didn't know anything about it."

In the case of Green v. Struble, 141 Okla. 207, 284 P. 895, this court, in the first paragraph of the syllabus, with reference to delegation of power of agency, said:

"As a general rule, an agent has no implied power to delegate his powers to a subagent, and any one employed by him as a subagent does not become the agent of the principal without the consent of such principal."

In the case of Whitney, Ex'r, v. Low, 137 Okla. 1, 278 P. 1096, in the fourth paragraph of the syllabus, this court said:

"Agency is never presumed, but is a question of fact to be proven, and the burden of proving agency, including not only the fact of its existence, but the nature and extent thereof, rests upon the party alleging it."

And in the case of Walker v. W. T. Rawleigh Co., 133 Okla. 75, 271 P. 166, as to declarations and acts of an alleged agent, this court, in the first paragraph of the syllabus, said: .

"It is well established that neither the declaration nor acts of an alleged agent can be admitted in evidence to prove that he is the agent of another."

In St. John v. Ivers, 124 Okla. 215, 255 P. 706, this court said in the third paragraph of the syllabus as follows:

"In an automobile accident case, where defendant admits ownership of the car, and plaintiff's allegations as to agency of defendant's daughter, who was driving at the time of the accident, merely show general authority based on permissive use, this admission and these allegations raise a presumption or inference that the daughter was acting within the scope of her general authority at the time of the accident, but where defendant's averments and proof establish that at the time of the accident the daughter was driving the car without the knowledge or consent of the owner, for her own pleasure, and in violation of express instructions, and where this evidence is uncontradicted by rebuttal evidence and the witnesses are in no way impeached, the presumption previously existing is destroyed, the lack of authority on the particular occasion is established, and no question of fact as to agency at the time of the accident remains."

The evidence in this record is clear, concise, convincing, and undisputed, that Pete Martin was not an employee of the bridge company, and any inference or presumption raised by the mere fact that at some time he collected tolls, and this without the knowledge or consent of the bridge company, tending to show that he might be an employee of the bridge company, is destroyed by the positive testimony that he was not an employee of the bridge company.

It is a harsh rule that would make an owner of property liable for the acts of a man who was acting in regard to such property without the knowledge or consent of the owner. Under any theory of this case it should be reversed, with directions to sustain the motion for directed verdict.

Even had Pete Martin been an agent or servant of the bridge company there would be no liability for his unauthorized act.

This court, in Rawley v. Commonwealth Cotton Oil Co., 88 Okla. 29, 211 P. 74, said:

"We are fully convinced that no liability has been shown. In the first place, considering the rights and liabilities of the parties from the standpoint of master and servant, an essential ingredient of liability is lacking, viz., that the shooting does not appear to have been within the scope of the boys' employment, even assuming that they had authority from the corporation or their fathers as officers of the corporation to collect ten cents from the injured person for the privilege of fishing in the pond."

Under the authorities cited, supra, the motion to quash should have been sustained, for the reason that the district court never secured jurisdiction and had no extraterritorial jurisdiction, and could only get service in Pontotoc county, and after service had in Oklahoma county upon the defendant when challenged by a proper motion it failed to give the district court of Pontotoc county jurisdiction.

The motion for directed verdict at the close of the evidence should have been sustained: First, the petition did not state a cause of action; second, if taken as true, pleaded facts which would relieve the defendant of any liability and the plaintiff is bound by the solemn allegation of his petition.

Next, the motion should have been sustained, for the reason that the only theory on which Pete Martin could be said to have been an employee of the defendant bridge company was a presumption raised by the fact that at some time he collected toll for the bridge company, acting in the place and stead of his father, Geo. Martin, who was an employee of the bridge company. This presumption was destroyed by the positive testimony of George Martin and George Key.

To hold the Ada-Konawa Bridge Company liable for the acts of a man who was not an employee, who was acting in his own behalf, without the knowledge or consent of the owners of the bridge company, is fixing a responsibility on the bridge company without its knowledge or consent or without the knowledge or consent of its owners.

I am of the opinion that this cause should be reversed and remanded to the district court of Pontotoc county, with directions to dismiss plaintiff's petition.

---

HEFNER, J. (dissenting). I cannot agree with the majority opinion in this case. The duty of George Martin was to collect the tolls and deposit them in the bank. This was the extent and scope of his authority. Pete Martin, who fired the shot, was not on the pay roll of the company in any capacity and was never paid by the company, nor recognized by it as having any authority to collect tolls temporarily in the absence of his father, George Martin. No bill was ever presented to or paid by the company for any such services performed by Pete Martin on the occasion in question. George Martin, the father, was temporarily away from the bridge, and, without the knowledge or consent of the company, had his son, Pete, collect tolls during his absence.

I think the facts in this case bring it within the rule announced by this court in the case of Rawley v. Commonwealth Cotton Oil Co., 88 Okla. 29, 211 P. 74, where it is said:

"The mere employment of a watchman to guard property and keep away trespassers does not involve authority to shoot trespassers. * * *"

The defendant had no knowledge whatever that Pete Martin was collecting the tolls. I see no authority in the record for George Martin to delegate such authority to him. Conceding there was such authority, the record certainly does not present a case where there can be any authority given to shoot an individual for failure to pay the toll. We might assume that, when the plaintiff went upon the bridge without first having paid the toll, he was a trespasser. He, in fact, had no right to cross the bridge without paying the toll, but, if he did so, certainly this record does not present a case where the defendant in any way whatsoever gave Pete Martin authority to shoot plaintiff.

In the body of the opinion in the Rawley Case, supra, this court said:

"We are fully convinced that no liability has been shown. In the first place, considering the rights and liabilities of the parties from the standpoint of master and servant, an essential ingredient of liability is lacking, viz., that the shooting does not appear to have been within the scope of the boys' employment, even assuming that

they had authority from the corporation or their fathers as officers of the corporation to collect ten cents from the injured person for the privilege of fishing in the pond."

The rule is clearly announced that, where the servant is authorized to collect a fee for the privilege of fishing in a pond, it does not authorize the servant to shoot a person who refuses to pay the fee. In the case at bar, conceding that Pete Martin was the servant of defendant, and that he had the right to collect the fee for crossing the bridge, certainly, under the rule announced above he did not have the right to shoot a person who crossed the bridge without paying the fee.

As I view the evidence, plaintiff has failed to establish a case against the defendant.

KORNEGAY, J., concurs in this dissent.

Note.—See under (4, 5) annotation in L. R. A. 1918F, 721; 21 R. C. L. 861; R. C. L. Perm. Supp. p. 5119. (7) annotation in 70 L. R. A. 733; 18 R. C. L. 776, 777; R. C. L. Perm. Supp. p. 4503; R. C. L. Pocket Part, title "Master and Servant," § 236.