Orvil Otis HOLMES, Otis H. Holmes, Alma Young and Roy Young, Plaintiffs in Error,

v.

STATE of Oklahoma ex rel. Preston A. TRIMBLE, County Attorney in and for Cleveland County, State of Oklahoma, Defendants in Error.

No. 40667.

Supreme Court of Oklahoma.

Sept. 21, 1965.

Andres L. Hamilton, Oklahoma City, and Coy McKenzie, Norman, for plaintiffs in error.

Preston A. Trimble, County Atty., Irby Taylor, Asst. County Atty., Norman, for defendants in error.

BLACKBIRD, Justice.

This action was instituted in July, 1962, by the State of Oklahoma, on relation of the County Attorney of Cleveland County, hereinafter referred to as plaintiff, to recover from one C. L. Little and the parties named herein as plaintiffs in error, but hereinafter referred to as defendants, the sum of $3,-000.00, which said sum was the amount of a criminal appearance bond, upon which the defendant, Orvil Otis Holmes, was principal, and the other defendants were sureties.

The bond had been forfeited by a previous order entered June 20, 1962, in a district court criminal action then pending against Holmes in the same County, when he failed to appear for trial on that date.

No effort was ever made to vacate said bond forfeiture order in the criminal action in which it was entered. In the present action on the bond, defendants filed a motion to quash, and when this was overruled, filed a brief answer in the form of a general denial. At the trial, when it appeared that no summons in the action had been served on C. L. Little, the action was dismissed as to him. Before defendants' counsel announced that he was appearing for the other defendants, he orally moved for a continuance because of the absence of another defendant, Roy Young, and one unnamed witness. This motion being overruled, and defendants making no objection, on any ground to proceeding with the trial, plaintiff introduced its evidence by stipulation. When it had rested, defendants introduced evidence tending to show that on June 20th, the aforementioned date he was to have appeared in court for trial on the criminal charge, Holmes, who apparently had been residing in Oklahoma City with his mother, went, instead, to a doctor's office there; that said doctor, after examining him, found that he

"* * * had a nervous condition and heart trouble" with "some high blood pressure * * *", for which said ailments, treatment was prescribed and commenced, and he was directed to "lay down and take it easy * * *".

The Norman, Oklahoma, attorney who had represented Holmes in the aforementioned Cleveland County criminal action, testified that, on the morning that previous case was set for trial, he arrived at his office at approximately 8:30, was informed that Holmes' mother had telephoned from Oklahoma City and left word for him to return her call; that, when he telephoned Mrs. Holmes, he asked her to have Holmes contact him immediately by telephone; then he went to the Cleveland County court house where he was when the case "was called * * *"; and that the Court clerk thereafter called him (the witness) to answer the telephone in his office. The attorney-witness further testified:

"* * * Mr. Holmes was on the phone and told me that he was in his doctor's office and the nurse would talk to me. I had some conversation with the nurse and I told the nurse to have Dr. P(——) call as soon as he was available. My records reveal here, that at 9:45 the bond was forfeited and immediately thereafter Dr. P(——) called the court clerk—

* * * * * *

I told the voice that indicated that he was Dr. P(——) * * * that he would need to send to Judge Brown a certificate stating Mr. Holmes' condition. * * *."

The above witness's testimony was corroborated to some extent by the introduction into the evidence of a letter filed in the criminal action from the Oklahoma City doctor above referred to, addressed to Judge Brown and dated "June 20, 1962" stating that Holmes was "* * * unable to appear in court to-day, June 20, 1962." However, there is no evidence indicating that this letter was received by anyone at Norman before June 21, 1962 the date of the

court clerk's filing stamp on it. Nor is there any evidence showing directly that the above mentioned Judge, before whom the criminal charge against Holmes came to trial on June 20, 1962, was ever apprised of Holmes' whereabouts, or situation, as described above. In fact, the above attorney-witness's testimony indicates the contrary. Concerning what, if anything, occurred after he received Holmes' doctor's long distance telephone call in the Cleveland County Court Clerk's office, this witness testified as follows:

"Q.  On that particular day (June 20) did you have any further conversation, incident or action with regard to this defendant?

"A.  Not that day, no.  * * *."

Defendants' principal assignments of error in the present appeal from the judgment against them on the bond, are, in substance, that the trial court erred in refusing their request for continuance to enable Holmes' Dr. P to be summoned, or brought into court, as a witness for them; and that the trial court erred in entering judgment against them in view of the evidence showing that the reason the subject appeal bond had been breached was Holmes' illness, which, under the rules governing appearance bond forfeitures, is considered an "act of God". The substance of defendants' arguments relative to the latter assignment, is that, under the cases they cite, the forfeiture of a criminal appearance bond, when its principal's absence is due to an "act of God", is an abuse of judicial discretion.

■ Defendants' described arguments are without merit and inapplicable to the situation here. They pertain to a defense that constitutes a collateral attack on the bond forfeiture order entered in the previous criminal action. In this situation, the following excerpt from Ruckman v. State, 44 Okl. 160, 143 P. 1050, applies:

" * * * If there has been an honest mistake, if the principal in the bond has been taken suddenly ill so as to render his appearance, when wanted, impossible, *and a showing is made* in good faith *during the term at which the forfeiture was taken,* the court has a right to *set aside* the forfeiture upon such terms as may be just under the provisions of section 6110, Rev.L. 1910, which, among other things, contains the following:

'But if at any time before the final adjournment of court the defendant or his bail appear and satisfactorily excuse his neglect, the court may direct the forfeiture to be discharged upon such terms as may be just.'

"In this case *no efforts or showing were made relative to the forfeiture until after the term of court had closed, and not until suit was brought for judgment on the bond. The judgment of forfeiture became final with the expiration of the term of court at which it was entered, and this final judgment is not open to a collateral attack in a subsequent action against the principal and sureties on the bond.* This is a repeated holding of this court. * * *."  (Emphasis ours.)

Here, since defendants filed no motion to vacate the forfeiture order *in the criminal action,* within the term during which it was entered, the question of whether, or not, the court entering the order, abused its discretion in doing so, was not properly before the trial court, and is not an issue in this appeal. As they made no such objection to forfeiture of the bond, but waited until the present action was filed to collect its principal amount, before doing so, their answer, like the court described the one in the above quoted case, stated no defense, since it did not allege, nor did the evidence show, that the previous forfeiture order was obtained by fraud, or was void for any other reason which could be properly shown in a collateral attack. As said in this court's quotation in Addington v. State ex rel. Pruet, 172 Okl. 61, 44 P.2d 131, from its previous opinion in Melton v. State, 46 Okl. 487, 149 P. 154, 155:

" * * * irregularities in the forfeiture will be considered waived, un-

less raised as the statute prescribes *in the court taking the forfeiture, and at the term in* which the forfeiture was had." (Emphasis added.)

And, in Ramer v. State ex rel. Ward, Okl., 302 P.2d 139, 141, this court in speaking of a fact that was urged to be an "act of God exonerating the surety", said:

"In any event, under our statutes, 22 Okl.Stat.1951 § 1108, the appropriate time to produce this fact to relieve the surety from the obligation of the forfeited bond was *during the same term* and *in the same court* in which the forfeiture was declared. State v. Hines, 37 Okl. 198, 131 P. 688; Hines v. State, 39 Okl. 638, 136 P. 592; Detroit Fidelity & Surety Co. v. United States, 8 Cir., 59 F.2d 565." (Emphasis added.)

■ In view of the foregoing, the trial court cannot be held to have erred in rejecting defendants' claimed defense, nor to have erred in refusing to continue the trial for Dr. P to testify.

■ Pertaining to a third, and last, "ASSIGNMENT OF ERROR", defendants represent that C. L. Little, (against whom the action was dismissed at the beginning of the trial, as hereinbefore noted, because he had never been served) was the only party ever named a defendant in the action that was a resident of Cleveland County, the other defendants being residents of Oklahoma County. The substance of their argument seems to be that an action of this character is transitory, in which, under Tit. 12 O.S.1961, §§ 139 and 154, one defendant must be a resident of the county in which it is brought, before summons may validly be issued therein to parties who are not residents of said county. Their position seems to be that the action's dismissal as to Little left the trial court without jurisdiction. Though defendants do not mention that subject by name, their arguments obviously pertain to venue; and there is no merit in them. As we have seen, the only pleading they filed previous to the filing of their answer was an ordinary motion to quash

"the purported summons" previously issued therein. That motion raised no question as to the venue of the action, and, under the circumstances of this case, they are precluded from raising it for the first time on appeal. See Ada-Konawa Bridge Co. v. Cargo, 163 Okl. 122, 21 P.2d 1.

As defendants' arguments have failed to sustain their burden of showing ground for reversing it, the judgment they appealed from herein is hereby affirmed.