**Donald JACKSON, Appellant,**

v.

**REMINGTON PARK, INC., An Oklahoma Corporation, Appellee.**

No. 80644.

Court of Appeals of Oklahoma, Division No. 1.

April 5, 1994.

crime against the defendant, *Rounds v. State,* 679 P.2d 283, 287 (Okl.Cr.1984).

James A. Belote, Oklahoma City, for appellant.

Daniel J. Hoehner, Oklahoma City, for appellee.

## MEMORANDUM OPINION

JONES, Presiding Judge:

Donald Jackson brings this appeal from the denial of a motion for new trial filed after the trial court granted the Appellee–Defendant's Motion for Summary Judgment. The Motion for Summary Judgment was filed on the basis that Appellee, Remington Park, was not liable under the theory of respondeat superior for the intentional tortious act of its servant consisting of assaulting Appellant. The motion also posited that Appellee is not liable under a theory of negligent hiring and retention of Appellee and punitive damages should not be assessed under 23 O.S. § 9. The Appellee's Motion for Summary Judgment was granted. Appellant filed a motion for new trial alleging genuine issues of fact exist precluding summary judgment and the decision is contrary to law, which was overruled.

As argued in the brief on the motion for new trial[1] and in the appellate briefs here, Appellant contends there is a substantial controversy as to the liability of Appellee for the intentional acts of the employee of Appellee. According to Appellant, the doctrine of *Respondeat Superior* applies when there is a relationship of master and servant at the time of the incident and in respect to the very transaction out of which the injury arose, under the authority of *World Publishing Co. v. Smith,* 195 Okla. 691, 161 P.2d 861

---

1. The Appellant Filed a supplemental brief in support of the motion for new trial. This brief was filed the day after the trial court overruled the motion for new trial. More importantly, it attempts to include evidence that was not before the court at the time of the ruling on the summary judgment. Such new evidentiary material was not properly to be considered in ruling on the motion, *Culpepper v. Lloyd,* 583 P.2d 500 (Okla.1978), and will not be considered on appeal, as it is not properly a part of the record here.

(1945). Raper was an employee of defendant at the time of the assault, and the question arises: was he acting in the scope of his employment? Appellant asserts a presumption exists that when the servant is in the performance of his master's business, he is acting within the scope of his employment, citing *Ada–Konawa Bridge Co. v. Cargo,* 163 Okl. 122, 21 P.2d 1 (Okl.1933). The employer is responsible in damages for torts committed by a servant who, in the commission of the tort, is acting in the line of his employment, and within the scope of his authority, to rightfully do the particular thing which he did do in a wrongful manner. *Ada–Konawa, supra.* In general terms an act is done in the performance of the master's business (within the course of employment) if:

> (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account. *Ada–Konawa, supra* 21 P.2d at p. 7

■ In this cause it is not disputed that the actions of Bill Raper, which are the subject of this action, were a result of a personal dispute over a debt arising in another state and owed by Appellant. Appellant went to the racetrack to pay off half of this debt and this is when the assault occurred. The assailant had worked for Appellant in 1986 and 1987 as an independent contractor. Appellant (but not Appellee) was aware at the time he went to Appellee's premises the assailant had threatened him. Raper, the assailant, had been involved in an altercation at Ruidoso Downs (consisting of striking another man in the face), out of which no prosecution ensued by agreement of the parties, and this fact could have been discovered by the defendant by calling the police department there. Raper had also been involved in a verbal altercation with a third party at Remington Park which was investigated by the Okla-

homa Horse Racing Commission's law enforcement division and found to have been a domestic dispute over a former girl friend. There is no evidence in this record showing that Appellee was aware of the fact or the investigation.

The debt was in no way connected with the employer's business. There are no facts in the record which would compose a jury question as to whether or not the servant, Bill Raper, was acting in the line of his employment, and within the scope of his authority. Collecting old debts can not be fairly and naturally incident to the business of the employer. Likewise, the assault was not done while the servant was engaged upon the master's business with a view to further the master's interest, nor did it arise from some impulse naturally growing out of or incident to an attempt to perform the master's business. The assault, according to uncontroverted facts, arose wholly from a personal motive on the part of the servant to do the act on his own account.

Appellant offers the following legal analysis as a basis to show facts sufficient to present a jury question here:

> [T]he employer knew that Raper was an independent contractor and that he might conduct business in that capacity during the time he was acting within the scope of authority of the Defendant. This knowledge includes the fact that the Defendant would interact with his clients in discussing the payment and collection of outstanding debts. Because the above facts present sufficient evidence to indicate that Raper was acting within the scope of his employment there is sufficient evidence to present this issue to the jury....

Appellant has presented this Court with no authority that would support any view of this argument which would allow recovery under the doctrine of *respondeat superior* for damage resulting from acts of the servant arising from a purely personal motive to do an act for his own benefit simply because the employer knew employee was also, or had been, an independent contractor. There is no evidence of any connection between the personal business of the servant and the business of

the employer. There is no evidence that collecting this personal debt furthered the business of the employer. The trial court did not err in refusing to grant a new trial on this basis.

■ Secondly, Appellant contends the trial court erroneously denied the motion for new trial on the basis of the claim for negligent hiring or retaining the assailant, Mr. Raper. Appellant states that Oklahoma recognizes negligent hiring and retention claims as a basis for imposing liability upon an employer. *Dayton Hudson Corp. v. American Mutual Liability Co.*, 621 P.2d 1155 (Okl.1980), *Mistletoe Express Service, Inc. v. Culp*, 353 P.2d 9 (Okl.1959). Both of these cases deal with factual situations in which the tortfeasor is engaged in the work of the master. Cases from other jurisdictions are cited along with the Restatement of Agency (Second), § 470, which appears to deal only with the liability of the principal to an agent. More to the point is the Restatement of Agency (Second), § 213(b), (liability of one conducting an activity through a servant is subject to liability for harm resulting from his conduct if he is negligent or reckless in the employment of improper persons or instrumentalities in work involving risk of harm to others). Comment *d.* to § 213 illustrates the rule's application to this cause:

. . . .

The dangerous quality in the agent may consist of his incompetence or unskillfulness due to his youth or his lack of experience considered with reference to the act to be performed. An agent, although otherwise competent, may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others *while in the performance of a duty,* he is subject to liability for harm caused by the vicious propensity. The negligence may be *in entrusting an agent with instrumentalities* which, in connection with his known propensities and the qualities of the instrumentalities, constitute an undue risk to third persons.

These propensities may be either viciousness, thoughtlessness, or playfulness.

One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the *care which a prudent man would take in selecting the person for the business in hand.* What precautions must be taken depend upon the situation. One can normally assume that another who offers to perform simple work is competent. If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation.

The quotation teaches that any liability which may attach is in relation to the work of the master: "If liability results it is because ... the employer has not taken the care which a prudent man would take in selecting the person for the *business in hand. . .in entrusting an agent with instrumentalities* which, in connection with his known propensities and the qualities of the instrumentalities, constitute an undue risk to third persons." The comment also states one can assume that another who offers to perform simple work is competent, but if, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation. Here, there is no issue raised that would allow an inference to be drawn that the business the servant was hired to do, that of a farrier, posed a serious risk of great harm to the public. The comment states that in circumstances such as this, one may ordinarily assume that one offering to do simple work is competent. Therefore, in relation to this employee, no duty was breached by reason of Appellee's failure to have an established policy to investigate potential employees other than relying on the requirement that each potential employee obtain a license from the Oklahoma Horse Racing Commission. Absent actual knowledge of unfitness,[2] or circumstances sufficient to put a prudent man upon inquiry as to this partic-

2. 25 O.S.1991 § 11: Actual notice consists in express information of a fact.

ular fact,[3] no liability attaches. In such an instance as this, where the injury was in no way incurred in the course of the business of employer (and contrarily; arose from a purely personal dispute between the combatants), and no evidence that employer had actual or constructive notice of the alleged vicious propensities of the assailant, there is no showing the trial court erred in denying the Appellant's motion for new trial.

AFFIRMED.

HANSEN and ADAMS, JJ., concur.

---

**3.** 25 O.S. § 13: Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.