No. 21,413.

WILLIAM MANSFIELD, *Appellee,* v. THE WILLIAM J. BURNS INTERNATIONAL DETECTIVE AGENCY, *Appellant.*

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Tortious Acts of Servant—Liability of Principal.* A master or principal is responsible for the tortious acts of his servant or agent where such acts are incidental to and done in furtherance of the business of the master or principal, even if such acts are done willfully or in excess of the authority conferred.

2. SAME—*Agent of Detective Agency—Assaulting Suspected Criminal— Extorting Confession.* Where one representing a detective agency is authorized to obtain a confession from a suspect, and in executing that authority commits an assault and battery upon the subject, the principal is responsible for the manner of the agent in the execution of the

authority and for the wrong of the agent in selecting the means by which the authority was executed.

3. ASSAULT—*Damages—Trial—Counsel Reading Magazine to Jury.* The reading of a short article from a magazine in the course of the argument of counsel, which was argumentative and illustrative in character, condemning such methods as were employed by the agent of the defendant in the present case and containing statements which would have been unobjectionable if they had been original with counsel, is held not to be a ground of prejudicial error.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed March 9, 1918. Affirmed.

*J. H. Brady, E. H. Henning,* both of Kansas City, *J. B. Larimer,* of Topeka, *Wentworth E. Griffin,* and *Cameron L. Orr,* both of Kansas City, Mo., for the appellant.

*L. C. True, Jacob S. Detwiler,* and *E. E. Martin,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by William Mansfield against the William J. Burns International Detective Agency to recover damages for assault and battery. The defendant appeals from the judgment in the sum of $2,250 in plaintiff's favor rendered upon the verdict of a jury.

A family by the name of Moore living near Red Oak, Ia., were murdered in 1912 by some person who used an axe in perpetrating the deed. The defendant was employed to discover the murderer, and James M. Wilkerson, a detective employed by defendant to act for it in Kansas, was assigned to the case. Wilkerson looked up plaintiff's record and came to the conclusion that he was the one who had committed the murder and was the same person as "Insane Blackie," a person who had the reputation of having committed crimes of that character. Wilkerson went to the packing house in Kansas City where plaintiff was employed, called him from his work and told him he was under arrest. He called him "Insane Blackie" and thrust up his chin in order to see a scar upon his neck by which he sought to identify him. Police officers of Kansas City having been summoned, Wilkerson and the latter, without any

warrant having been issued for plaintiff's arrest, conducted him to a waiting automobile in which they took him to police station No. 1 where he was confined for a short time. Thence he was taken in an automobile across the river to station No. 4, in Argentine, where he was confined and sweated all night without rest, and the next morning he was returned to station No. 1, from which he was later removed to the county jail. Plaintiff testified that while crossing the bridge on the way to station No. 4, Wilkerson punched him in the ribs and threatened to throw him in the river if he did not confess to the crime; and that he was plied with questions all night at station No. 4, where Wilkerson threatened and cursed him and applied vile epithets to him, struck him in the face and loosened some of his teeth, brandished an axe about his head and against his cheek, telling him he would be killed the same way the Moore family had been killed, pushed him down over a chair and injured his body, and deprived him of food and water, all in an attempt to obtain a confession from him. He also testified that after he was returned to station No. 1, Wilkerson again struck him squarely in the mouth. Physicians who had examined plaintiff at the jail testified to finding certain injuries upon his body. These acts of violence were contradicted by Wilkerson in his testimony, but the conflict in the testimony was settled in favor of the plaintiff by the general verdict, no special findings having been requested.

The principal contention of the defendant is that the acts of violence toward the plaintiff, the brutal assaults committed on him, and the torture to which he was subjected by its agent, Wilkerson, were outside the scope of his employment, and for them the defendant is not liable. The general rule is that a master or principal is liable for the tortious acts of his servant or agent where such acts are incidental to and done in furtherance of the business of the master or principal, and this is true although the servant or agent acted in excess of the authority conferred upon him or willfully or maliciously committed the wrongs.

In *Hynes v. Jungren,* 8 Kan. 391, where it was alleged that an agent willfully assaulted and beat the plaintiff and wrongfully detained him in jail, and where the principal defended

44—Kan.—1778

upon the ground that the agent acted as a constable under an order of civil arrest, it was held that, the agent having acted wrongfully in doing that which he was directed to do, the principal was responsible for his acts whether the agent acted innocently or maliciously.

In *Wheeler & Wilson Mfg. Co. v. Boyce,* 36 Kan. 350, 13 Pac. 609, the principal was held liable for the acts of its agent in arresting and detaining the plaintiff, it appearing that the acts were incidental to and done in furtherance of the principal's business, and this notwithstanding that the principal did not directly authorize nor subsequently ratify the tortious acts.

In a case where a brakeman wrongfully pushed a man off a train, the railway company insisted that the act was outside of any duty the brakeman owed to the company, and that it was not liable for his act, although he might have done it in the interest of the company. It was held that his act was within the scope of his implied authority, and hence the company might be held responsible for his acts. (*O'Banion v. Railway Co.,* 65 Kan. 352, 69 Pac. 353.)

In another case it was held that a master might be held liable for the acts of his servant in setting out a fire, if the setting of the fire was a part of the business, or resulted from some act done in the performance of the business, of the principal. (*Mirick v. Suchy,* 74 Kan. 715, 87 Pac. 1141.)

In *Crelly v. Telephone Co.,* 84 Kan. 19, 113 Pac. 386, it was held that the master was not responsible for an assault committed while the servant was in its service, but which was not done in the course of the employment. It was added, however, that if the tortious acts were done in the execution of the master's business and as a means of performing the work assigned to the servant the master would be liable although the acts were willfully and wantonly done.

In *Lehnen v. Hines & Co.,* 88 Kan. 58, 127 Pac. 612, a proprietor of a hotel was held responsible for the acts of his clerk, who assaulted and beat a guest and caused her to be arrested and taken from the hotel because she declined to leave the hotel on the demand of the clerk, as against a contention that the clerk was acting for himself and not for the proprietor nor within the scope of his employment when the

assault was committed.  It was held that as the clerk had charge of the hotel for the time being, and as the wrongful acts were committed by him while he was in the control of the hotel and as a means of exercising such control, he was acting for the proprietor and the latter was responsible.

Other cases of like import are: *Whitman v. Railway Co.,* 85 Kan. 150, 116 Pac. 234; *Roberts v. Kinley,* 89 Kan. 885, 132 Pac. 1180; *Martin v. Railway Co.,* 93 Kan. 681, 145 Pac. 849; *Sipult v. Land and Grain Co.,* 94 Kan. 224, 146 Pac. 329.

In some cases the line between acts which are within and those which are without the scope of employment is not easily traced, but in this case no difficulty can arise.  It is conceded that Wilkerson was acting within his authority in the examination of the plaintiff and in the effort to obtain a confession from him.  While Wilkerson denies the acts of cruelty and torture with which he is charged, he admitted that whatever he had done in making the investigation and in the effort to obtain a confession was done at the instance of the defendant. The verdict involves a finding that Wilkerson assaulted and beat the plaintiff, and did it with such force and violence as to loosen his teeth and to cause bruises and lameness, and that he went to the extent of swinging an axe over and against him in order to make him confess the commission of the crime of murder of which he was innocent.  Defendant says that the detection of crime, in which it is engaged, is a lawful and honorable business, one that may be carried on by legal means, and that it should not be held liable for brutal assaults and the beating up of suspects with axes that may have been committed by its agents while engaged in its business.  No doubt there may be a searching investigation without inhumanity, nor is there any doubt that the business may be carried on by legal and efficient methods, without putting suspects on the rack or extorting confessions by the drastic and cruel means that were employed in this instance; yet, withal, the acts of its agent appear to have been done in the course of his employment.  Authority was conferred on Wilkerson to secure a confession, and in the execution of this authority the wrongs complained of were committed.  The agent selected the means by which the orders of his principal were to be carried out and the confession was to be obtained, and the methods employed

by him in this case were therefore employed in the course of the business of the principal and in doing what the agent was employed to do. As we have seen, a principal is ordinarily responsible for the acts of his agent done in furtherance of his business, for the manner employed by the agent in the execution of his orders, and for the wrong of the agent in selecting the means by which the authority is to be executed.

There is nothing substantial in the complaint that the court failed to give the jury a correct statement of the issues involved in the case. It is stated that the court gave an epitome of the allegations of the petition, and that some of them set out the arrest and detention of the plaintiff and carried the implication that a recovery might be had on that ground. There was no chance for a mistake in this respect, as it was expressly stated that the plaintiff claimed no damages except for assault and battery. The allegations referred to were preliminary to those setting forth the assaults that were committed, and were no more than a statement of the circumstances under which these assaults were made. In view of the positive disclaimer of damages for false imprisonment, and the fact that every one connected with the trial understood that the only damages sought in the case were for assault and battery, no prejudice could have resulted from the reference to the arrest. Besides, in the instructions the court directly informed the jury that the only damages plaintiff could recover were those sustained by reason of assault and battery committed upon the plaintiff, if any was committed. We think the instructions taken together fairly presented the case to the jury, and that there is no merit in any of the objections presented.

It is finally contended that error was committed by the court in permitting counsel for plaintiff to read to the jury a short magazine article in condemnation of such practices as Wilkerson employed in the present case, and which are called the administration of the "third degree." The article was read as a part of counsel's argument, and the matter contained in it was argumentative and illustrative in character and would have been unobjectionable if it had been original with counsel. Indeed, stronger language might have been used in characterizing and condemning the means employed by the agent of the defendant than was used in the article read, without trenching

upon the bounds of permissible argument or of committing prejudicial error.

The judgment is affirmed.