No. 25,549.

CARL O. BJORKMAN, a Minor, by SOPHIA BJORKMAN, His Mother, as Next Friend, *Appellant,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Put Off of Running Train—Special Findings—No Warrant for Judgment for Defendant.* In an action against a railroad company for personal injuries, where a general verdict was rendered for the plaintiff, the special findings examined and held not to warrant the rendering of judgment for the defendant.

2. SAME—*Excessive Verdict—New Trial.* An apparently excessive verdict, which may have been induced by failure to give an instruction fairly stating defendant's theory of the case, was sufficient ground to compel the granting of a new trial.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed January 10, 1925. Reversed.

*A. L. Berger,* of Kansas City, and *G. B. Silverman,* of Kansas City, Mo., for the appellant.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, *Edwin S. McAnany, Maurice L. Alden,* and *Thos. M. Van Cleave,* all of Kansas City, for appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover damages for injury sustained by the plaintiff when jumping from one of defendant's trains. A general verdict for plaintiff was returned by the jury; also answers to special questions. The trial court overruled a motion by defendant for a new trial, but sustained its motion for judgment on the special findings. The plaintiff appeals.

The plaintiff at the time of the injury was nineteen years old and

resided in Topeka. He had gone to Barton county to work in the harvest fields. About five o'clock in the morning of July 2, 1921, he boarded one of defendant's freight trains at Great Bend with the intention of going to Dodge City. His claim was that while he was on the train, about a mile from Great Bend, and while the train was running at about twenty miles an hour, one of the brakemen, William Louraine, approached him and demanded that he pay fifty cents or he would put him off; that he refused to pay the brakeman, whereupon the brakeman came toward him in a threatening attitude and manner, waving and motioning his hands and arms, and in a loud, angry, abusive manner ordered the plaintiff off the moving train, etc.; that, being in fear of the brakeman, he attempted to jump off the train, but fell in such manner that his leg and foot were crushed to such an extent that amputation of the foot was necessary. The jury returned a general verdict for plaintiff for $21,000 and answered special questions as follows:

"1. When Bernard Hallock got on top of a freight car and looked west and saw Carl O. Bjorkman's head and shoulders above the top of a box car about three cars forward on the train, was William Louraine, defendant's brakeman, on said box car with a club in his hands? A. Yes.

"2. Did William Louraine, defendant's brakeman, demand four bits from Carl O. Bjorkman as he was climbing on the top of a box car about the middle of the freight train, and threaten to strike him with a club and throw him off the train if he refused to pay Louraine fifty cents? A. Yes.

"3. If you answer the foregoing question No. 2 'Yes,' did William Louraine threaten to throw Carl O. Bjorkman off and wave a club at him and order him off the train while it was running fast because Bjorkman refused to pay him said four bits? A. Yes.

"4. If you find in favor of the plaintiff, please state definitely what act or acts of negligence the defendant was guilty of which caused the injury to the plaintiff. A. He, William Louraine, defendant's brakeman, approached Bjorkman waving his club, and in a loud and abusive language ordered him from the moving train.

"5. If you find in favor of the plaintiff, please state: (a) What act or acts of willful, wanton, reckless or malicious negligence the defendant was guilty of; and (b) who was guilty of such act or acts of negligence which caused the injury to the plaintiff. A. (a) Wantonness on the part of Wm. Louraine, who approached the plaintiff waving his club in a threatening manner, ordering him from the moving train. (b) William Louraine.

"6. Did the brakeman, William Louraine, get on the locomotive as it was crossing Main street, or before it passes the freight depot in Great Bend, and remain on the locomotive until reaching Larned? A. No.

"7. Did conductor Robinson, rear brakeman Little, engineer Arnold and fireman Robohn see William Louraine get on the locomotive as it was moving between Main street and the freight house? A. No.

"8. Did William Louraine, brakeman, after getting on the locomotive at Great Bend, fire the engine for fireman Robohn from about a mile from Great Bend to Larned? A. No.

"9. If the jury find for the plaintiff, state how much actual damages you award him. A. $14,750.

"10. If the jury find for the plaintiff, and further find that he is entitled to punitive damages, state the amount you award him? A. $6,333."

Judgment was rendered for the defendant on the theory that the brakeman had no authority to demand or collect fifty cents, and that the brakeman compelled the plaintiff to jump from the train in revenge for his refusal to pay; that the brakeman was not acting within the scope of his authority. The defendant admits that it is a part of the brakeman's duty, on a freight train, to eject trespassers, and that, if in line of his duty in doing so, he compels one to jump from a train that is moving so rapidly as to make the act dangerous, and injuries result, the defendant would be liable. It contends, however, that the plaintiff was not ordered from the train because he was a trespasser, but solely because he would not submit to the "graft" exactions of the brakeman; that, therefore, the brakeman was not acting within the scope of his authority.

On the other hand, the plaintiff contends that it was not the demanding of the fifty cents and the refusal of the plaintiff to pay it that caused the loss of the plaintiff's leg, but that it was the brakeman's waving his club, his threat to strike the plaintiff with his club, and the brakeman's threat to knock the plaintiff off the moving train.

In *K. C. Ft. S. & G. Rld. Co. v. Kelly,* 36 Kan. 655, it was said:

"Where a boy fifteen years old gets upon a freight train wrongfully, and as a trespasser, for the purpose of riding without paying his fare, and is commanded by the brakeman to jump off the train while in dangerous motion, in the night-time, and in obedience to that command, and in fear of being thrown off, jumps off the train and is run over and injured, the company is liable." (Syl. ¶ 1. See *R. R. v. Gants,* 38 Kan. 620, 621, 625; *R. R. v. Whipple,* 39 Kan. 539, 540.)

"It is within the scope of the general authority of a brakeman on a freight train to prevent trespassers from getting on the train, and to remove such persons who wrongfully get thereon; but if in so doing he does not exercise care and caution, but acts wantonly or maliciously, and an injury results, the railroad company is liable." (Syl. ¶ 2. See *City of Wyandotte v. White,* 13 Kan. 192; *R. R. v. Fitzsimmons,* 22 Kan. 686.)

In the opinion it was said:

"The removal of trespassers from the train was within the implied authority and became the duty of the servants in charge of the train; and the fact that

Bjorkman v. Railway Co.

in so exercising that right or duty they acted negligently and wantonly, and caused the boy to jump off the train while running at a speed unsafe for him to get off, and he was injured, will not exonerate the defendant. (*Ramsden v. Boston & Albany Rld. Co.*, 104 Mass. 117; *Higgins v. Turnpike Co.*, 46 N. Y. 23; *N. W. Rld. Co. v. Hack*, 66 Ill. 238; *Kline v. C. P. Rld. Co.*, 37 Cal. 400.) The defendant had the right to put the boy off from its cars, and in doing so could use such force as was necessary to eject him, but in so doing must exercise the right with ordinary care and prudence on its part. And if the train was moving at such a rate of speed as to render it unsafe, and the night was dark, it must stop or slow up the train; and the mere fact that the boy was on the train as a trespasser was not such negligence as to relieve the defendant from this obligation, and gave its servants no license to negligently and wantonly eject him in a manner liable to do him great bodily harm. (*Morgan v. Comm'rs of Miami Co.*, 27 Kan. 89.) And it could make no difference whether he was ejected by actual force or by threats, if he jumped from the train in obedience to a command of the brakeman." (p. 657.)

*Dixon v. Northern Pac. R. Co.*, 37 Wash. 310, was a case in which a boy of eighteen was beating his way on a freight train from Portland to Tacoma, riding the bumpers six or seven cars back of the engine. The train stopped at Centralia, and when it again was in motion and had gone about two or three hundred yards a brakeman came over the cars and asked Dixon if he had any money. Dixon replied that he had none. The brakeman swore at Dixon and told him to get off. Dixon replied that the train was going too fast to get off. The brakeman cursed Dixon and stepped on the fingers of the hand by which he was holding onto the car, forcing him to release his hold and fall, whereby Dixon's arm was injured so that it had to be amputated. The court held that the servant was within the scope of his authority, as he did wrongfully an act that he had been authorized to do in a proper manner. In the opinion, among other things, it was said:

"It is well settled, generally, that a railroad company is responsible in damages to a trespasser for torts committed upon him by a servant who, in the commission of the tort, is acting in the line of his employment, and within the scope of his authority—not within the scope of his authority as applied to the commission of the tort, for no authority for such commission could be conferred, but within the scope of his authority to rightfully do the particular thing which he did do in a wrongful manner." (p. 313.)

Many cases are cited in the briefs which need not be referred to here. They are on the border line or in the twilight zone, where distinctions are difficult and where different conclusions might reasonably be reached. The facts in the Kelly and Dixon cases, *supra*, are more like those here than are those in any of the other cases

cited. In the Kelly case the brakeman asked the boy if he had any money to pay his fare; in the Dixon case the brakeman asked only if he had money. From the record presented in the instant case we are of the opinion that the brakeman did not step aside from his master's business. He was doing an act, at the time, connected with such business and in furtherance thereof. It was a part of his duty, in the performance of the defendant's business, to remove trespassers from the train. The fact that he asked the plaintiff for fifty cents is not conclusive that he had abandoned his master's business and was acting and continued to act for himself alone. The general verdict of the jury, when viewed in connection with the answers to all the special questions, and especially the fourth and fifth, indicate that at the moment of the injury complained of he was acting within the scope of his employment. The acts of negligence found by the jury to have caused the injury consisted in the brakeman's approaching the plaintiff waving his club, and in loud, abusive language ordering the plaintiff from the moving train. Under all the circumstances it was not proper to render judgment for the defendant.

·The defendant moved for a new trial, among other things because the verdict was excessive, because of erroneous instructions and because of failure to give instructions requested. The defendant tried the case on the theory that the acts of the brakeman in compelling the plaintiff to jump from the train arose solely out of his attempt to exact graft from the plaintiff and in revenge because of plaintiff's failure to respond thereto. We are of opinion, from the record presented, that the verdict was excessive and that it may have been induced by the failure of the court to give an instruction fairly setting out the defendant's theory of alleged attempted graft by the brakeman. While the instructions requested by the defendant were not proper because they went further than fairly stating the defendant's theory, they served to direct the court's attention to the matter both at the time of trial and on the motion for new trial.

The judgment is reversed and the case remanded with directions to grant a new trial.